IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADINA JOSIC and DANIEL JOSIC,

    Plaintiffs,

v.

DEVNET F. TRINKLE a/k/a "Devnet Chandler",

    Defendant.
_____/

Case No. 8:25-cv-

# COMPLAINT

1. This is a Complaint seeking specific performance of a contract to partition and convey real estate located at 2934 W. Wallcraft Avenue in Tampa, Florida, specifically Lot 26 and Lot 27 of the Revised Map of Wallcraft Subdivision.

2. In July 2019, Plaintiffs Adina and Daniel Josic purchased from Defendant Devnet F. Trinkle the then-vacant former residence of Ms. Trinkle's late mother.

3. Because the residence was not code-compliant and Defendant wanted to retain a portion of the land to sell to a developer or other potential buyer, Plaintiffs were not able to obtain a mortgage from a bank to finance the purchase. Instead, Defendant agreed to a seller-financed transaction where she became the mortgage holder on the property to be paid off after Plaintiffs repaired and improved the

property and Defendant partitioned one of the two lots so as to give Plaintiffs the entirety of the land on which the main house was located while she retained the balance.

4. For nearly six years, Plaintiffs have performed every obligation under the parties' agreements. Defendant, however, has failed to record the deed conveying Lot 27 to Plaintiffs and she has failed to complete the partition of Lot 26 and convey to Plaintiffs the portion thereof encompassing the main house.

5. Accordingly, Plaintiffs bring this action seeking specific performance, a partition of Lot 26, and injunctive relief.

## PARTIES

6. Plaintiffs Adina and Daniel Josic are a married couple, having been married for 46 years. Both Plaintiffs are citizens and residents of the State of Florida and have resided at the Property since August 2019.

7. Defendant Devnet Trinkle is a citizen and resident of the State of New York, residing at 127 Hidden Valley Road, Luzerne, New York since at least 1997.

## JURISDICTION

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as this is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant under Florida's Long Arm Statute because this case relates to her failure to perform acts required under a contract she entered into to be performed in Florida. Fla. Stat. § 49.193(1)(g).

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of the action is situated in this District.

**FACTS**

11. On information and belief, Defendant grew up in Hillsborough County, Florida, residing with her mother, Edith S. Trinkle, at 2934 W. Wallcraft Avenue ("the Property").

12. The Property consists of two parcels, specifically Lots 26 and 27 of the Revised Map of Wallcraft Subdivision. In or about 1926, a single-family home was constructed on the Property, which is situated almost entirely on Lot 27 but with a small portion (approximately 11 feet) of the structure extending onto Lot 26. A second structure, a guest house, was built later, situated entirely on Lot 27.

13. Plaintiffs understand and believe that Defendant lived with her mother at the Property as a child, but that she has resided in Lake Luzerne, New York since at least 1984, where she has worked as a speech pathologist licensed by the State of New York.

14. In February 2008, Defendant's mother transferred the Property by Warranty Deed from herself as the sole owner to herself and Defendant as Joint Tenants with the Right of Survivorship.

15. On information and belief, at some point prior to 2015, Defendant's mother moved to New York to be closer to her daughter. Defendant's mother died in 2015, after which Defendant became the sole legal owner of the Property.

16. Plaintiffs, having noticed the Property and that it was vacant, expressed interest in purchasing it.

17. In December 2018, Plaintiffs met Defendant at the Property to see the inside of the house. Defendant took Plaintiffs through the property. At the end of the tour, Defendant handed Plaintiffs a slip of paper with the current asking price for the Property, which was $1,350,000.00.

18. By this time, the Property had been unoccupied for approximately six years. It was in a state of disrepair, it was not in compliance with the Florida (Residential) Building Code, and it was in need of repairs and improvements.

19. Plaintiffs saw potential in the Property, but were not agreeable to paying $1,350,000 for it. Plaintiffs instead offered Defendant $850,000 and Defendant agreed, subject to the condition that she retain the undeveloped portion of the Property (*i.e.*, the portion of Lot 26 on which the house and other structures did not sit).

20. Plaintiffs agreed that they would be responsible for bringing the structures into compliance while Defendant agreed to undertake the partition of Lot 26 so that the main house would no longer extend onto Lot 26, with Defendant retaining the remainder of Lot 26.

21. Defendant had her attorney, Melissa Champagne, prepare the paperwork for the transaction.

22. On July 3, 2019, each of the parties executed a Warranty Deed transferring Lot 27 together with "all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining" to Plaintiffs to have and to hold "the same in fee simple forever." A true and correct copy of the Warranty Deed is attached as **Exhibit A**.

23. Among other things, the Warranty Deed expressly set forth that "**THIS** property does not constitute the homestead of the Grantor under the laws and constitution of the State of Florida as neither Grantor nor any member of his household resides at the property." (*See* Exh. A at p. 1.)

24. However, because the main house extended several feet onto Lot 26 and the numerous code violations, Plaintiffs were not able to obtain conventional financing for the purchase.

25. To give both sides time to complete their respective tasks, Plaintiffs paid Defendant a down payment of $30,000, took possession of the Property, and

executed a Mortgage (**Exhibit B**) and two Balloon Notes (**Exhibits C and D**) with Defendant financing the transaction. In short, Plaintiffs agreed to pay Defendant $3,500 per month and then pay the full balance off approximately one year later, on August 1, 2020. The Notes provided for zero percent interest.

26. The idea was that, once the tasks of partitioning Lot 26 and bringing the structures into compliance were completed, Plaintiffs could obtain traditional financing from a bank and pay off the seller-financed mortgage in full.

27. Defendant and her attorney, Ms. Champagne, took possession of the original documents executed by the parties, providing Plaintiffs with only copies.

28. Plaintiffs moved into the Property in August 2019. They discovered that the issues with the structures (a main house and a guest house) were much more significant than they had been led to believe. Among other issues,

    a. the electrical panel box was not code-compliant;

    b. the plumbing did not work;

    c. none of the kitchen, laundry room, or bath rooms in the main house were functioning or usable; and

    d. the only working bathroom on the Property was in the guest house.

29. Defendant had told Plaintiffs that the bathroom sink in the main house drained slowly and needed a new valve but, in fact, the plumbing in the main house

was not functioning at all. Attempts to use the plumbing in the main house caused water to collect, resulting in the collapse of the kitchen ceiling.

30. Nevertheless, Plaintiffs proceeded to invest considerable time and resources into the Property. Among other work, Plaintiffs installed or caused to be installed a gas line, added new plumbing and electrical wiring, remodeled the kitchen, renovated all four bathrooms, constructed a new staircase, and replaced the pumps in the swimming pool.

31. Plaintiffs made the $3,500 monthly payments required under the Mortgage and Notes.

32. Plaintiffs also paid all taxes attributable to Lot 27.

33. By May 2020, however, Defendant had failed to partition Lot 26 as she had promised.

34. Defendant's attorney, Ms. Champagne, prepared a Loan Modification Agreement extending the maturity date on both notes until "180 days following the date that Lot 27 is partitioned and the respective deed and Mortgage thereto is recorded in the Official Records of Hillsborough County, Florida, and notice of the same is submitted from Lender to Borrower in writing." (**Exhibit E** ¶ 1.) The parties executed the Loan Modification Agreement on June 22 and July 1, 2020, respectively.

35. At the time, it was anticipated Defendant would accomplish the

partition within six months.

36. To bring the main house onto land owned by Plaintiffs, it was necessary that the eastern 11 feet of Lot 26 (plus sufficient additional space to comply with local law) be partitioned and transferred to Plaintiffs. There is no other structure on that land, or other impediment to partitioning that portion of Lot 26.

37. Defendant discussed selling the remaining portion of Lot 26 following the partition to the owner of the neighboring property, encompassing Lots 24 and 25. On information and belief, the neighbor proceeded to devote time and effort in preparing and pursuing paperwork to obtain approval of the partition and the county approved the proposed partition. The deal did not close, however, because Defendant demanded that the neighbor pay the purchase price for Lot 26 in five separate cashier's checks, each deposited in five different bank accounts. The neighbor was not comfortable with this request and the deal did not close.

38. Plaintiffs have continued to make the agreed-upon $3,500 monthly payments, paid all taxes attributable to Lot 27, and made further improvements to the Property.

39. Defendant, however, has failed to finalize the partition of Lot 26.

40. On multiple occasions, Plaintiffs have followed up with Defendant regarding the status of her efforts to partition Lot 26. Defendant has promised she was working on it, but has stated she is waiting on the city or other people and that

these things took time.

41. Neither Defendant nor her attorney, Ms. Champagne, ever recorded the Warranty Deed conveying Lot 27 to Plaintiffs.

42. Earlier this year, rather than perform under the parties' agreement, Defendant attempted to get Plaintiffs to agree to purchase the entirety of Lot 26 for an additional $350,000.

43. To date, Plaintiffs have paid $289,000 toward the $850,000 purchase price, paid taxes on the Property totaling $61,605.32, and invested nearly $500,000 in improving the property.

44. To date, Defendant has failed to partition Lot 26 and convey the portion thereof and Defendant has failed to record the deed transferring Lot 27.

## COUNT ONE – SPECIFIC PERFORMANCE

45. Plaintiffs hereby repeat and incorporate the preceding allegations as if set forth herein.

46. As reflected in and/or evidenced by the July 3, 2019 Warranty Deed (Exhibit A), the July 3, 2019 Mortgage (Exhibit B), the July 3, 2019 Balloon Notes (Exhibits C and D), and the July 1, 2020 Loan Modification Agreement (Exhibit E), Defendant agreed to partition Lot 26 so as to convey a portion thereof to Plaintiffs sufficient that the main house, located principally on Lot 27, would sit entirely on property owned by Plaintiffs.

47. Plaintiffs have performed all of their obligations under the parties' agreements.

48. Defendant has failed to partition Lot 26 and convey such portion thereof to Plaintiffs, and thereby failed to transfer full and complete title to Lot 27 together with "all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining" to Plaintiffs to have and to hold "the same in fee simple forever."

49. To the extent Defendant contends that the parties' agreements, prepared by Defendant's attorney, did not expressly obligate her to partition and convey such portion of Lot 26, the parties at the very least had an oral agreement that Defendant would do so and the part performance doctrine removes any oral agreement from the requirements of the statute of frauds because:

   a. Plaintiffs paid consideration;

   b. Plaintiffs took possession of the Property;

   c. Defendant acquiesced in Plaintiffs' possession of the Property;

   d. Plaintiffs paid taxes on the Property when due; and

   e. Plaintiffs made valuable and permanent improvements to the Property.

50. In reliance upon the parties' agreement, Plaintiffs fully performed their own obligations, occupied, maintained, and improved the Property (including the

investment of nearly $500,000 worth of repairs and improvements) and paid taxes thereon.

51. No legal remedy would adequately compensate Plaintiffs, who have not only devoted enormous time, money, and effort to the Property, but have made it their home for nearly six years.

52. Plaintiffs are entitled to specific performance by Defendant of her obligation to partition Lot 26 and convey full and clear title of such portion of Lot 26 as is necessary to encompass the main house.

## COUNT TWO – ACTION FOR PARTITION

53. Plaintiffs hereby repeat and incorporate the preceding allegations as if set forth herein.

54. The owners and occupiers of Lot 27 are Plaintiffs Adina and Daniel Josic, and their address is 2934 W. Wallcraft Avenue, Tampa, Florida 33611.

55. Defendant Devnet F. Trinkle has an interest in Lot 27 as the mortgagee.

56. No other party has an interest in Lot 27.

57. The owner of Lot 26 is Devnet F. Trinkle.  Her address is 127 Hidden Valley Road, Lake Luzerne, New York, 12846, and her mailing address is P.O. Box 613, Lake George, New York, 12845.

58. Plaintiffs Adina and Daniel Josic are the occupants of Lot 26, and have been since August 2019.

59. No other party has an interest in Lot 26.

60. Plaintiffs thus request that the Court adjudge the rights and interests of the parties with respect to Lot 26 and order the partition thereof pursuant to Fla. Stat. § 64.01, *et seq.*

## COUNT THREE – INJUNCTIVE RELIEF

61. Plaintiffs hereby repeat and incorporate the preceding allegations as if set forth herein.

62. On July 3, 2019, Plaintiffs and Defendant executed a Warranty Deed transferring Lot 27 together with "all the tenements, hereditaments, and appurtenances thereto belonging or in anywise appertaining" to Plaintiffs to have and to hold "the same in fee simple forever." (Exhibit A.)

63. Defendant and/or her attorney, Melissa Champagne, retained the original Warranty Deed.

64. To date, neither Defendant nor Ms. Champagne have recorded the Warranty Deed with the Hillsborough County Property Appraiser.

65. Plaintiffs have suffered irreparable injury by virtue of Defendant's failure to record the Warranty Deed, imperiling their ability to use and enjoy the Property and quiet title thereto.

66. There is no adequate remedy at law for Plaintiffs.

67. The balance of the hardships as between Plaintiffs and Defendant show

that an injunction is warranted.

68. An injunction is not contrary to the public interest.

69. Plaintiffs thus request that the Court enter an injunction directing Defendant or her representative to record the July 3, 2019 Warranty Deed in the land records of Hillsborough County.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Enter judgment in favor of Plaintiffs and against Defendant;

2. Order Defendant to partition Lot 26 and convey full and clear title of such portion of Lot 26 as is necessary to encompass the main house situated principally (but not entirely) on Lot 27 already conveyed to Plaintiffs;

3. Alternatively, order a judicial partition of Lot 26 in accordance with the parties' agreement;

4. Issue an injunction requiring Defendant or her representative to promptly record the July 3, 2019 Warranty Deed in the land records of Hillsborough County.

5. Award Plaintiffs their attorneys' fees and costs; and

6. Grant Plaintiffs such further relief as the Court may deem just and

equitable.

DATED: September 26, 2025          Respectfully submitted,

**LAMBERT LAW OFFICES, PL**

/s/ Judith S. Lambert
Judith S. Lambert
Lumsden Executive Park
617 W. Lumsden Road
Brandon, FL  33511
Tel. (813) 662-7429
judy@judithslambert.com


**MARINO FINLEY LLP**

/s/ Tillman Finley
Daniel Marino (*pro hac vice* forthcoming)
Tillman Finley (*pro hac vice* forthcoming)
818 Connecticut Avenue, NW, Suite 801
Washington, DC  20006
Tel.  (202) 223-8888
tfinley@marinofinley.com
dmarino@marinofinley.com